UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DARWIN ADRIAN CEPEDA GUAMAN, Petitioner, -v- KENNETH GENALO, *et al.*, Respondents. | : | 26 Civ. 5872 (JPC) ORDER |

JOHN P. CRONAN, United States District Judge:

Last night, July 10, 2026 at approximately 11:47 p.m., Petitioner Darwin Adrian Cepeda Guaman initiated this case by filing a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241. Dkt. 1. Shortly thereafter, he also filed a proposed Order to Show Cause for emergency relief, Dkt. 3 ("Proposed Order"), and a memorandum of law in support of that application, Dkt. 4 ("Memo of Law"). As of the time of this Order, this case has not yet been assigned to a District Judge. At 12:17 a.m. this morning, counsel for Petitioner sent the filings in this case to the undersigned as the Part 1 Judge, requesting expedited review.

Upon receiving a petition under 28 U.S.C. § 2241, a "court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. Here, however, Petitioner requests more immediate relief in the form of a temporary restraining order enjoining Respondents from "transferring Petitioner out of this District" or "removing him from the United States." Proposed Order at 3. Petitioner also requests that the Court order Respondents to show cause why they should not, *inter alia*, be required to "immediately to release Petitioner from custody," *id.* ¶ 2, and that Respondents be enjoined "from re-detaining Petitioner without notice and an opportunity to be heard before this Court," *id.* ¶ 5.

Although Petitioner contends that a transfer out of this District would "impair the Court's ability to grant effective habeas relief," Memo of Law ¶ 3, when a habeas petitioner "files a petition naming [his] immediate custodian, the District Court retains jurisdiction" to rule on the petition notwithstanding any subsequent transfer, *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). Petitioner also does not offer any reason why he faces an "immediate risk of transfer" aside from a general and unsubstantiated accusation that "[Immigration and Customs Enforcement] has been rapidly transporting petitioners to jurisdictions outside New York" for strategic litigation reasons, Memo of Law ¶¶ 3-4, or, even assuming that to be the case, explain why such transfer "would frustrate counsel's access," *id.* ¶ 3, particularly given the possibility of Petitioner's counsel having in-person or telephonic contact with him wherever his place of detention may be. Additionally, Petitioner's other requests for relief, *see* Petition at 16-17, appear to go beyond the "purpose of a temporary restraining order," which "is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits." *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962).

Petitioner's motion for immediate, emergency relief therefore is denied. *Cf. Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) ("[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.").[1] This

[1] Affording Respondents adequate opportunity to be heard is particularly important because the undersigned harbors doubts about Petitioner's entitlement to relief, and in particular, his request that the Court "[o]rder Respondents to immediately release Petitioner," Petition at 16; *see* Proposed Order ¶ 2, or require Respondents to conduct an immediate bond hearing, Petition at 16; *see* Proposed Order ¶ 3. Although the details surrounding Petitioner's initial detention upon entry into the United States and his subsequent release from custody, including the legal authority invoked by Respondents for those actions, are not entirely clear from the Petition, Petitioner alleges that he and his family were detained by U.S. Customs and Border Protection ("CBP") after they crossed the U.S. border in Arizona on October 25, 2023, and that they were then released on October 26, 2023, because CBP determined that Petitioner "present[ed] neither a security risk nor

Order is without prejudice to the Judge to whom this action is assigned reconsidering whether such relief is appropriate. Similarly, this Court denies Petitioner's request that it set an expedited briefing schedule, so that the assigned Judge may determine the appropriate schedule.

SO ORDERED.

Dated: July 11, 2026
New York, New York

JOHN P. CRONAN
United States District Judge

---

a risk of absconding." Petition ¶ 4. Petitioner cites 8 C.F.R. § 212.5(b) as the basis for his release on October 26, 2023. *Id.* Section 212.5(b), in turn, provides that the parole of aliens in certain groups detained pursuant to the expedited removal provisions in Section 235(b) and (c) generally may be justified only for urgent humanitarian reasons or significant public benefit. In *Rana v. Genalo*, No. 26 Civ. 849 (JPC), 2026 WL 1863815 (S.D.N.Y. June 29, 2026), the undersigned held that an alien who initially crossed the border and that day was detained by Department of Homeland Security agents under 8 U.S.C. § 1225(b)(1)(B)(ii), subsequently was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and then was re-detained upon termination of that parole, remained governed by Section 1225(b)(1)(B)(ii). Under that provision of the Immigration and Nationality Act, detention is mandatory and an alien is not statutorily entitled to a bond hearing.